**SO ORDERED.**

**SIGNED May 19, 2008.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **IN RE: WILLIAM H. RAY**<br>**SHELIA E. RAY** | **CASE NO: 07-31298** |
| **AJH INVESTMENTS, INC.**<br>          **Plaintiff** | |
| **VERSUS** | **ADVERSARY NO.: 07-3032** |
| **WILLIAM H. RAY**<br>**SHELIA E. RAY**<br>          **Defendants** | |

### REASONS FOR DECISION

This matter comes before the court after a trial on plaintiff's complaint asserting that a claim for damages caused by the defendants is non-dischargeable in the related Chapter 13 case. This is a core proceeding pursuant to 28 U.S.C. §157(I) and (L), inasmuch as it concerns the dischargeability of particular debts and contemplation of an amendment to, and confirmation thereof, the Chapter 13 plan. Jurisdiction is proper per 28 U.S.C. §1334 and by reference from the District Court pursuant to Local District Court Rule 83.4.1, incorporated into Local Bankruptcy Rule 9029.3.

No party has moved to withdraw the reference and the district court has not done so on its own motion. This Court makes the following findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, judgment is rendered in favor of the plaintiff to the limited extent permitted by the Bankruptcy Code.

## Law and Analysis

The debtors filed a case under Chapter 13 on September 13, 2007. Debtors' confirmed second amended plan provides that the plan will be amended to reflect the ruling of the Court in this adversary proceeding. Although plaintiff objected to the plan in its original form, plaintiff did not object to confirmation of the second amended plan.

The trial in this adversary proceeding was held on May 15, 2008. Debtors testified that they rented a home at 1815 University Avenue, in Monroe, Louisiana, for a term of two years. They remained in possession of the property for a longer period, with the lease continuing on a monthly basis. The lease contained a clause limiting pets to two inside cats and one outside dog. The lease provided for a "pet fee" of $200.00.

The bankruptcy case being filed after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act, means that the changes affective the Chapter 13 discharge apply here. Under the new law, the Chapter 13 "superdischarge" is not so super anymore.[1] Simply put, debts for willful and malicious injuries to either persons or property are non-dischargeable in Chapter 7 pursuant to 11 U.S.C. §523(a)(6). However, in Chapter 13, certain debts for willful *or* malicious injuries to persons are not dischargeable, while debts for damages to property are dischargeable. 11

---

[1]Debtors' counsel argued in closing that this debt is dischargeable in Chapter 13. Defendants' pleadings do not raise this issue. Instead, debtors allege the home fell into disrepair due to the plaintiff's failure to make repairs, thus allowing it to deteriorate over time.

2

U.S.C. §1328(a)(2), (4). *In re Nwoke*, 2008 WL 750591 (Bankr.E.D.Va. 3/18/2008;*In re Derryberry*, 367 B.R. 616 (Bankr.E.D.Tenn. 4/30/2007).[2] However, the distinction between personal injury and property damage does not apply to the hardship discharge under 11 U.S.C. §1328(b)and (c); nor would it apply if the debtors' case converts to a case under Chapter 7. Therefore, we turn to a consideration of the plaintiff's claim for those limited purposes.

It is well settled that the burden of proof in dischargeability actions is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 St. Ct. 654 (1991); *Matter of Beaubouef*, 966 F.2d 174 (5th Cir.1992). Section 523(a)(6) provides: "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." The burden of proof in objections to dischargeability of particular debts is the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 St. Ct. 654 (1991); *Matter of Beaubouef*, 966 F.2d 174 (5th Cir.1992). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 (1998).

The case of *Cottonport Bank v. Reason*, 255 B.R. 829 (Bankr. W.D. La. 2000) is helpful in showing what it takes to establish intentional injury. There, the debtor engaged in a series of pre-petition action involving the lender's collateral, including removing fixtures and inventory from a store. The lender had a security interest on the items. Reason then filed a Chapter 7 petition and agreed to surrender his home, on which the lender also had a mortgage, to the lender. Nevertheless,

---

[2]Why the test is stated in §523(a)(6) as "willful *and* malicious" but "willful *or* malicious" in §1328(a)(4) is unknown, but not relevant to these facts.

3

he removed a metal storage building from the realty, leaving only a slab, and removed a light pole from its concrete base and light fixtures and ceiling fans from the home. The most important factor in establishing the debtor's intent to injure the creditor was the fact that the debtor left a sign posted at the home, expressing his animus toward the lender and its personnel in profane terms. *Cottonport Bank v. Reason*, 255 B.R. 829 (Bankr. W.D. La. 2000), Adversary no. 00-8014, *Exhibit P-11*. Then, adding injury to insult, he held a garage sale to dispose of items removed from both the residence and the store. This court held that the lender was entitled to relief under both 11 U.S.C. §727(a)(2)(A) and 11 U.S.C. §523(a)(6). In a footnote, this Court noted that the evidence clearly indicated Reason's intention to "deprive Cottonport of its collateral by any means at his disposal." *Reason*, 255 B.R. at 833.

In this matter, while the debtors in this case did not leave a sign expressing in profane terms their animus towards the plaintiff, the accumulation of the animal waste in their rented premises and the concomitant damages to those premises are no less eloquent in establishing the requisite intent of both objective substantial certainty of harm and subjective motive to cause harm required by the Fifth Circuit test for "willful and malicious injury." *Miller vs. Abrams*, 156 F.3d 598 (5th Cir. 1998), as well as the test stated by the Supreme Court in *Geiger*.

Mr. and Mrs. Ray testified that they essentially abandoned the leased premises for a period of approximately three years, although neither could recall precisely when they moved out. Both stated they returned to feed the cats. Mr. Ray seemed unable to remember that they even had a dog in addition to the failure to recall even the simplest detail concerning the floor plan of the house. Mr. Ray could not recall whether any of the animals had ever been treated by a veterinarian. There was no way for the cats or the mystery dog to exit the premises. Debtors claimed they were unable to

4

pay the rent of $700.00 a month so they relocated to two apartments which they rented for a total rent of $600.00. Mrs. Ray sought to explain that their son paid the rent on one apartment. Mrs. Ray testified that they left the house with the clothes on their backs and two beds. Notwithstanding the small number of items they took with them, both insist they had neither the money or the space in their apartment(s) to house the various furnishings, including a piano, left in the house, presumably for the enjoyment of the pets.

Debtors version of the rental payment situation is impossible to reconcile with the plaintiff's records showing rentals paid into early 2004. (Exhibit P-9.) Plaintiff's representative Terry Stockton went to the house on March 19, 2004, since the rent was past due. On reaching the residence, the smell was so strong, he was unable to enter. Other representatives of the plaintiff, John Deeters and Sol Hakim, also went to the premises and saw a number of cats running around the living room and dog and cat feces everywhere. The police were called, including Officer Stephanie McDaniel, who upon entering the premises became nauseated and vomited. The dog catcher removed nine cats and one dog from the premises. Mr. Ray was arrested and charged with animal cruelty. Mr. Deeters returned and took photographs, while wearing a gas mask. (Exhibit P-3 (a)-(r).) The premises were cleaned by plaintiff's employees, who also wore gas masks. The windows of the house were left open for weeks to permit the smell to dissapate. Plaintiff reportedly spent in excess of $100,000.00 on repairs, but is not claiming that amount.

Confronted with the pictures, Mr. and Mrs. Ray deny having seen the house in the horrid condition depicted. They insist they cleaned the litter boxes, although they admit they did not go through the house, but stayed in an area close to an entryway . They insist they did not notice a smell. Their testimony is simply not credible. Both are evasive and contradictory in their answers.

Plaintiff offered the testimony of David Rodgers with Cornerstone Construction estimating the cost of repairs at a conservative figure of $18,000.00. (Exhibit P-5.) Even pictures taken after the foul contents were removed from the premises reflect the need for extensive repairs to the walls and floors. (Exhibit P-4(d)-(h).) While other photos reflect a hole in the ceiling, no ceiling or roof repairs are included in Rodgers' estimate, other than painting to match.

Whether defendants actually vacated the premises some three years before the discovery of the damage to the house (although we doubt anyone could have lived in this filth) or in late 2003 or 2004, the fact is inescapable that the premises became uninhabitable due to the debtors actions and inactions. Plaintiff is entitled to its claim for $18,000.00 in damages. Here, however, it is limited to that claim being amended to be paid the low .037 dividend due the other unsecured creditors according to the Chapter 13 plan. This result is a travesty. Creditors similarly situated should object to confirmation on the basis of bad faith. That these defendants treated plaintiff's property with the same indifference shown in their cruel treatment of their animals is beyond peradventure.

**Conclusion**

Judgment is rendered in favor of the plaintiff, to the limited extent that debtors shall be required to amend their plan to reflect the findings of this court. However, these debtors may not discharge this claim under the hardship discharge provisions of 11 U.S.C. §1328(b); but in the event this case is converted to one under Chapter 7 the debt to plaintiff is non-dischargeable, and further, the debt is to be deemed non-dischargeable in the event debtors seek relief under Chapter 7 in a subsequent separate case. A separate and conforming order will be entered.

# # #